**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **REGINALD W. BELLAMY,** | * | |
| **Petitioner,** | * | |
| **v** | * | **Civil Action No. GJH-19-2230** |
| **RICHARD J. GRAHAM, JR.,** *Warden,* | * | |
| **MARYLAND ATTORNEY GENERAL,** | * | |
| **Respondents.** | | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

In their Answer to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Respondents assert that a number of Petitioner's claims are procedurally defaulted and the remaining claims are without merit.  ECF No. 8.  Petitioner Reginald W. Bellamy, who proceeds pro se, has responded.  ECF No. 9.  No hearing is necessary to resolve the matters pending.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).  For the reasons set forth below, the Petition shall be dismissed and a certificate of appealability shall not issue.

I.     **Background**

   A.     **Trial**

After a jury trial in the Circuit Court for Baltimore City lasting from September 24, 2014 through October 1, 2014, Bellamy was convicted of the October 20, 2004, first-degree rape, first-

degree sex offense, attempted first-degree sex offense, second-degree assault, and false

imprisonment of D.C.[1]

The evidence at trial established that Bellamy, presenting himself as a police officer, approached a woman on the streets of Baltimore City, handcuffed her at gunpoint, claiming she was under arrest, drove her to a remote location, and raped her. The Court of Special Appeals of Maryland summarized the evidence as follows:

> In the early morning hours of October 20, 2004, the female victim, D.C., was walking on Garrison Boulevard, in Baltimore City, when a man, presenting himself as a police officer, emerged from a vehicle and approached her. The man told D.C. that she was under arrest, pressed his gun on her, and handcuffed her. While D.C. was detained, the man collected her identification and asked her questions before placing her in the backseat of his car, where she waited for five to eight minutes.

> The man then drove D.C. to a remote parking lot, where at gunpoint he ordered D.C. to remove her clothes. The man put on a condom, made D.C. perform fellatio, and had vaginal intercourse with her without her consent. He then attempted to have anal intercourse, at which time his condom ruptured, and he ejaculated "on the back of [her] butt going down [her] legs." As D.C. was putting her clothes back on, the man pushed her out of the car, and drove away.

> D.C. walked to the home of her cousin, who took her to Bon Secours Hospital. There, D.C. was interviewed by police. She reported that the vehicle driven by her attacker—a black man, standing approximately 6'2" tall, and weighing approximately 180 pounds—had Maryland license plate MGG 435, which police later discovered was registered to Bellamy. D.C. was then transported to Mercy Hospital, where she underwent a medical examination.

> The examining nurse observed no injuries to D.C.'s body but did find superficial lacerations in her vaginal and anal areas. The nurse took swabs from D.C.'s vagina and of a fluid found on the back of D.C.'s right thigh. D.C. informed the nurse that she had had consensual sex on the day prior to the attack. At trial, the examining nurse testified that the injuries observed were consistent with D.C.'s description of events but that they could also have been caused by the previous day's consensual sex. The examining nurse sealed the swabs and placed them on a rack to dry. She left the swabs in a locked room while transporting D.C. to the emergency room. Upon returning she placed the swabs in individually labeled envelopes, placed those in a larger envelope, and signed the larger envelope's seal.

---

[1] To protect the victim's identity, the Maryland Court of Special Appeals referred to her by her initials.

Separately, officers executed a search and seizure warrant for Bellamy's DNA, based upon the registration of the license plate reported by the victim. Detective Sarah Connelly, the primary investigator at the time, collected swabs and sealed them in a container.

A serology expert removed the Sexual Assault Forensic Examiners kit from the secured vault and tested it, revealing sperm. The sperm and blood samples were sent to a DNA analyst with Bode Technology Group ("Bode"). Analysis of the vaginal sample revealed a mixture of DNA from D.C. and Roberto Gomez, and the thigh sample contained DNA from Bellamy.

In 2012, Bellamy was charged and indicted on multiple counts arising from the incident.[5] At trial, neither party offered any evidence of tampering or mishandling of any of the samples. To the contrary, the signed seals placed at each stage of the process remained intact.

_____

[5]Although as a result of D.C.'s statements and DNA evidence, Bellamy was identified as a suspect during the course of police investigation shortly after the attack, for unknown reasons the case was closed as a cold case and it was not until August 2010 that the case was assigned to a detective in the cold case unit."

ECF No. 8-1 at 112-15.

Bellamy was sentenced to three concurrent life sentences and an additional 20 years' incarceration for the false imprisonment. ECF No. 8-15 at 31.

## B.   Direct Appeal and Post-Conviction

Bellamy, through counsel, filed a direct appeal of his conviction to the Court of Special Appeals.  He raised five claims:

1. The trial court erred by excluding evidence of D.C.'s mental health diagnosis and medication.
2. The trial court erred by excluding testimony that a sexually transmitted disease could be responsible for D.C.'s injuries.
3. The trial court erred by admitting evidence without a proper chain of custody.
4. Mr. Bellamy's right to a speedy trial was violated.
5. The trial court should have merged Mr. Bellamy's conviction for false imprisonment into his conviction for first-degree rape for sentencing purposes.

ECF No. 8-1 at 65.

The court vacated Bellamy's sentence for false imprisonment, finding it should have been merged in the other offenses, but otherwise affirmed his convictions. ECF No. 8-1 at 112, 136. On February 11, 2016, the court's mandate issued. *Id*. at 137.

On February 29, 2016, the Court of Appeals of Maryland docketed Bellamy's petition for a writ of certiorari, which raised the same four issues rejected by the intermediate court. ECF No. 8-1 at 134-48. On April 25, 2016, the petition was "dismissed on the grounds of lateness." *Id*. at 149. Pursuant to Md. Rule 8-302(a) a petition for writ of certiorari must be filed no later than 15 days after the Court of Special Appeals issued its mandate.

Bellamy's post-conviction petition, as supplemented, raised numerous claims. ECF 8-1 at 150-54 (sixteen claims), 220-21 (three additional claims), 244-46 (ten consolidated claims); *see also* post-conviction opinion restating 22 claims raised by Bellamy pro se and through counsel, ECF No. 8-1 at 256-59. Several of the claims were withdrawn at his post-conviction hearing. ECF No. 8-1 at 259. In light of the overlapping issues raised in the petitions as supplemented, the Court considered the claims raised topically finding Bellamy proceeded on the following claims:

> (1) Petitioner's competency to stand trial, (2) the victim's credibility, (3) the condom, (4) alleged hearsay statements made by the victim, (5) the Internal Investigations Division files of the lead detective, (6) the "missing witness" instruction, (7) the motion for modification of sentence, (8) the application for review of sentence, and (9) the cumulative effect of the alleged errors.

ECF No. 8-1 at 259.

After a hearing held on April 17, 2018, the post-conviction court, by written opinion and order issued on November 19, 2019, granted Bellamy's request to file a belated motion for modification of sentence, but denied relief in all other respects. ECF No. 8-1 at 248-49.

Bellamy, pro se, filed a timely application for leave to appeal the denial of post-conviction relief asserting the same claims he presented to the state post-conviction court.  ECF No. 8-1 at 25, 293-310.  On December 19, 2019, through counsel, he filed an application for leave to appeal restating some of the same claims.  *Id*. at 25-26, 311-45.  The Court of Special Appeals summarily denied the application on July 12, 2019. ECF No. 8-1 at 346-47.

> **D.**     **Petition for Writ of Habeas Corpus**

In his petition filed with this Court, Bellamy raises 17 grounds for relief.  ECF No. 1-1. He claims, in Grounds One, Two and Three that the trial court committed evidentiary errors that violated his Sixth and Fourteenth Amendment rights to due process.  ECF No. 1-1 at 7-11. Specifically, Bellamy contends that the trial court erred in: (1) excluding evidence of D.C.'s mental health diagnosis and the medications she was taking; (2) excluding testimony that a sexually transmitted disease could have caused D.C.'s injuries; and (3) admitting DNA evidence without a proper chain of custody.  ECF No. 1-1 at 7-12.

In Ground Four, Bellamy claims the trial court violated his Sixth and Fourteenth Amendment rights to a speedy trial because the trial did not occur until two years after he was indicted.  ECF No. 1-1 at 12-13.

In Grounds 5-17, Bellamy alleges that the state post-conviction court erred in denying his petition. Grounds Five and Six concern Bellamy's assertion that the post-conviction court erred in finding no error occurred when  the trial court and "pretrial court" failed to make a finding on Bellamy's competency to stand trial.  ECF No. 1-1 at 13-15.

Grounds 7 through 16 concern Bellamy's claims that the post-conviction court erred in determining Bellamy did not receive ineffective assistance of counsel. Specifically:

> **Ground Seven**: Failure to request an evaluation of Bellamy's competency to stand trial. ECF No. 1-1 at 15.

**Ground Eight**: Failure to "call a medical expert to present psychiatric support that schizophrenia or bipolar disorder of a witness could've affected their credibility to testify." ECF No. 1-1 at 16.

**Ground Nine**: Failure to investigate and procure an expert to conduct DNA testing on crime scene evidence. ECF No. 1-1 at 17.

**Ground Ten**: Failure to "develop and present a defense theory to the judge and jury for exculpatory evidence found at [the] crime scene that would have exonerated petitioner." ECF No 1-1 at 18.

**Ground Eleven**: Failure to object to hearsay statements made by D.C. following the rape regarding the license place information and description of the assailant. ECF No. 1-1 at 19.

**Ground Twelve**: Failure to "investigate, compel production and inspection for discovery of chain of custody of exculpatory evidence discovered at the crime scene." ECF No. 1-1 at 19-20.

**Ground Thirteen**: Failure to "develop testimony that the State recovered and then failed to test the condom allegedly used during the perpetration of the rape, which would have provided the jury with additional reason to find reasonable doubt as to whether petitioner had in fact committed the rape." ECF No. 1-1 at 20.

**Ground Fourteen**: Failure to "request a[n] in camera evidentiary hearing of the admissibility of confidential material and information from the IID files of Detective Sarah Connelly." ECF No. 1-1 at 21.

**Ground Fifteen**: Failure of appellate counsel to "raise a colorable claim for reversal based on the trial court's refusal to grant a timely defense request for a missing witness jury instruction which matter had been properly preserved for appellate review." ECF No. 1-1 at 21-22.

**Ground Sixteen**: Failure to timely file a modification motion or application for review of sentence. ECF No. 1-1 at 23.

**Ground Seventeen**: the "cumulative effect" of trial counsel's performance resulted in the ineffective assistance of counsel. ECF No. 1-1 at 23.

## II.    Standard Of Review

### A.  Analysis Under 28 U.S.C. § 2254

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires federal courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and

citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Pursuant to the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the

record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## B.  Analysis Under *Strickland*

When a petitioner alleges a claim of ineffective assistance of counsel, he must show that counsel's performance was deficient, and the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Id.* at 688; *see Harrington*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court explains that the "first prong sets a high bar." *Buck v. Davis*, ___ U.S. ___, 137 S.Ct. 759, 775 (2017). Notably, a

"lawyer has discharged his constitutional responsibility so long as his decisions fall within the wide range of professionally competent assistance." *Id.* (internal quotation and citation omitted). The standard for assessing such competence is "highly deferential" and there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

Second, to satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's

claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### C.  Procedural Default Analysis

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of

one who is actually innocent.[2]  *See Murray v. Carrier*,  477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.  "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time."  *Id.*  (quoting *Murray*, 477 U.S. at 488).   Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

## III.   ANALYSIS

### A.   Grounds One Through Four

Bellamy's first four claims concern alleged trial court error. Bellamy presented these claims in his direct appeal alleging the trial court erred regarding the three evidentiary issues and that his right to a speedy trial was violated.  The Court of Special Appeals addressed each claim and rejected each in turn.  Bellamy, however, did not properly present these claims to the Court of Appeals, as his petition for writ of certiorari was untimely and the Court of Appeals expressly dismissed the petition on that basis.  ECF No. 8-1 at 149.

The failure to comply with procedural requirements of State law is an independent and adequate State law ground for dismissal and bars re-litigation of the claim in a habeas petition. *See Coleman*, 501 U.S. at 750, *see also Richmond v. Polk*, 375 F.3d 309, 322 (4th Cir. 2004);

---

[2]     Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.  *See Murray v. Carrier*, 477 U.S. at 496.  "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).  Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence.  *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Bellamy has not raised an actual innocence claim.

*O'Sullivan*, 526 U.S. at 847 (where habeas petitioner failed to seek discretionary review from state appellate court and "the time for filing such a petition ha[d] long passed," it "resulted in a procedural default"). The claims are procedurally defaulted as Bellamy failed to present them in a timely application for leave to appeal and the state courts would now find that he cannot assert those claims. *See Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *accord Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (stating that a procedural default occurs when a habeas petitioner fails to exhaust available State remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred (citation omitted)).

As noted, the dismissal of Bellamy's petition for writ of certiorari for failure to comply with the court's deadline for filing the petition constitutes an independent and adequate state procedural rule which prohibits this court's review of each of these claims. Therefore, these claims are procedurally defaulted. Bellamy's proffered basis to excuse the default is unavailing. Bellamy claims that he timely submitted the application for writ of certiorari in the prison mailbox but it was delayed in its delivery to the Court of Appeals and therefore the court erred in dismissing the petition as untimely. However, at the time Bellamy's petition was due and subsequently dismissed as untimely, Maryland had not adopted the prison mail box rule. Subsequently, the Maryland Court of Appeals adopted the prison mail box rule for certain filings by self-represented inmates, deeming such documents filed when delivered to prison authorities. *See Hackney v. State*, 459 Md. 108 (2018); Md. Rule 1-322(d) (Oct. 10, 2018) (establishing the prison mailbox rule for prisoner filings for certain "actions commenced on or after January 1, 2019, and insofar as practicable, to all actions then pending").

These first four claims are therefore procedurally defaulted.  As to any exceptions allowing the procedurally defaulted claim to proceed, the Court can discern none. Bellamy has offered nothing to establish that a fundamental miscarriage of justice would result if this Court does not reach the merits of these claims.  In other words, Bellamy has not introduced new and credible evidence that he is actually innocent.  *See Schlup*, 513 U.S. at 316.

**B.      Grounds Five Through Seven**

Bellamy contends that both before and during trial the court erred in failing to make a determination regarding his competency to stand trial.  He contends that his competency was discussed at pretrial hearings but the post-conviction court erred in concluding that the trial court and pretrial court did not violate his constitutional rights when they failed to invoke state statutory procedures to assess his competency. ECF No. 1-1 at 13-16. In rejecting these claims, the post-conviction court found:

> If, before or during a trial, the defendant in a criminal case or a violation of probation proceeding appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial. Md. Code, § 3-104 of the Criminal Procedure Article. There are three ways to trigger the trial court's duty to determine a criminal defendant's competency to stand trial: "(1) upon motion of the accused; (2) upon motion of the defense counsel; or (3) upon a *sua sponte* determination by the court that the defendant may not be competent to stand trial." *Kennedy v. State*, 436 Md. 686, 694 (2014) (citing *Thanos v. state*, 330 Md. 77, 85 (1993)).

ECF No. 8-1 at 261. The court explained that Bellamy introduced the following evidence to support his claim that there was sufficient information before the court to trigger a competency hearing under the statute:

> (1) a letter from trial counsel to [the court], dated March 18, 2014, requesting an advance postponement of the trial due to a possible "competency/not criminally responsible issue" with Petitioner (Exhibit 2); (2) the official transcript of [pretrial] proceedings . . . on January 16, 2014, in which [the defense] requested a postponement for, among other reasons, a competency evaluation (Exhibit 3); (3)

13

the Criminal Postponement Form from that hearing, reflecting "NCR evaluation" as one of the reasons for the postponement request (Exhibit 4); (4) the official transcript of [pretrial] proceedings . . . on March 28, 2014, in which trial counsel requested a postponement because she "had [Petitioner] evaluated for competency by a doctor" and the doctor "needs to evaluate him again and needs more time" to complete the evaluation (Exhibit 5); and (5) the Criminal Postponement Form from that hearing, again reflecting "NCR evaluation" as one of the reasons for the postponement request (Exhibit 6).

ECF No. 8-1 at 262. The post-conviction court nevertheless rejected Bellamy's contention that

trial counsel was ineffective in failing to request a competency evaluation holding:

> [Trial counsel] testified that she had many conversations with [Bellamy], specifically regarding his choice whether to testify in his own defense, which led her to believe that competency may be an issue. She retained a psychiatrist to examine [Bellamy] and obtained multiple trial postponements from the pretrial court so the examinations could be completed. When the psychiatrist informed trial counsel that he found [Bellamy] to be both competent and criminally responsible, she discussed the matter with [Bellamy]. She even offered to file the competency evaluation request and the report from the examining psychiatrist, but [Bellamy] decided not to file that request because it would delay the resolution of his case. These extensive efforts do not constitute deficient performance by trial counsel, but rather a reasonable and effective examination of the issue and the presentation of it to her client to make the final decision.

ECF No. 8-1 at 266; ECF No. 8-16 at 52-53 (transcript of post-conviction proceeding).

In addition to finding trial counsel's performance effective as to how she approached

Bellamy's competency, the post-conviction court also found that Bellamy could not demonstrate

prejudice because there was no evidence that he would have been found incompetent to stand

trial.  The evidence presented at the post-conviction hearing was that the psychiatrist who

examined him found he was competent and Bellamy testified during the post-conviction hearing

that he too believed he was competent to stand trial.  ECF No. 8-16 at 69-70.

The post-conviction court also found that the trial court did not err in failing to order a

competency evaluation.  The post-conviction court noted that defense counsel did not request a

court ordered competency evaluation and there was no evidence on the record of any actions or

statements by Bellamy during the six days of pretrial motions and trial that would have put the

trial court on notice that Bellamy needed a competency evaluation. ECF No. 8-1 at 264-65.

Rather, the issue was raised informally, only after the guilty verdict. *Id*.  The sentencing judge,

the same judge that presided over Bellamy's trial, stated that it had "no doubts that Mr. Bellamy

understands what's going on and that he is a very, very intelligent person."  ECF No. 8-1 at 264;

No. 8-15 at 28 (sentencing transcript).

In rejecting Bellamy's claims regarding the need for a competency evaluation, the state

post-conviction court distinguished *Pate v. Robison*, 383 U.S. 375 (1966), which Bellamy relied

on, noting that in *Pate*, "four defense witnesses . . . expressed the belief that the defendant was

insane and the prosecutor [advised] that the defendant's sanity be examined further." ECF No. 8-

1 at 264. The *Pate* Court noted that throughout the proceedings defense counsel insisted the

defendant's sanity was at issue and the evidence presented on the defendant's behalf entitled him

to a hearing which the state did not provide. *Pate*, 383 U.S. at 384-85.  In Bellamy's case, the

post-conviction court correctly concluded that the issue of Bellamy's competency was not raised

and the record evidence, including the defense-procured psychiatric evaluation and Bellamy's

own testimony, supported a determination that he was not incompetent. ECF No. 8-1 at 263-65.

Here, the trial record supports the post-conviction court's determination that there was no

indication of Bellamy's incompetency in the record.  Here, Bellamy contends that the trial

counsel's mere mention that she was examining the issue should have triggered his evaluation,

but he is mistaken. As the post-conviction court found, the record demonstrates that defense

counsel arranged for a competency assessment which found Bellamy competent, Bellamy

admitted during his post- conviction proceedings that he felt he was competent to stand trial, and

he directed his trial counsel not to request a court ordered competency evaluation.  In light of the

foregoing and the lack of any indicia in the trial proceedings that Bellamy was not competent,

the post-conviction court's decision shall not be disturbed.  The post-conviction court's findings

of fact are supported by the record and its conclusions of law are not contrary to Supreme Court

precedent.

      **C.**      **Ground Eight**

      Bellamy next alleges that the post-conviction court erred in its determination that trial

counsel was not ineffective when she failed to "call a medical expert to present psychiatric

support that schizophrenia or bipolar disorder of a witness could've affected their credibility to

testify."  ECF No. 1-1 at 16.  During the post-conviction hearing, Bellamy presented the

testimony of expert witness Dr. Neil Blumberg, "to prove that trial counsel should have retained

an expert" to use D.C.'s mental disorders and her prescription medication usage to "attack: the

victim's credibility."  ECF No. 1-1 at 16-17.

      The post-conviction court rejected this claim finding under Maryland law, "[e]vidence of

a witness' psychiatric history is admissible if it would shed light on the witness's credibility."

*Testerman v. State*, 61 Md. App. 257, 268 (1984) (citing *Reese v. State*, 54 Md. App. 281, 288-

89 (1983).  ECF No. 8-1 at 266.  Further, in reviewing and approving the pretrial court's ruling

on this issue, the post-conviction court quoted the pretrial order which, relying on *Testerman*

determined that "absent additional evidence there is no reason to believe schizophrenia would

affect a witness's credibility" and while "Maryland Courts have not addressed the affect [sic] of

bipolar disorder on a witness's credibility" other court's have found, absent additional evidence,

no reason to conclude "bipolar disorder would affect credibility or perception of reality." ECF

No. 8-1 at 268.   *Testerman* also requires "specific medical evidence explaining the effect of the

psychiatric disorder on that particular individual and her credibility to permit the inquiry."

*Testerman,* 61 Md. App. at 257. During the post-conviction hearing Dr. Blumberg offered

general testimony as to the effects of schizophrenia, bipolar disorder I, bipolar disorder II, and

schizoaffective disorder as well as the use of medications on credibility, but he did not evaluate

the victim and as such could not and did not offer any specific insight as to her credibility. ECF

No. 8-1 at 269, 272.

      Additionally, as to D.C.'s mental health diagnoses, trial counsel testified during the post-

conviction hearing that "there was only one reference in the SAFE report, in which the victim

self-reported the diagnoses, and that there was no unusual behavior supporting that evidence," so

counsel "did not make requests of the State for additional psychiatric records concerning D.C."

ECF No. 8-1 at 268-69.

      The post-conviction court found trial counsel's decision reasonable in light of her tactical

decisions as to what would be the most beneficial attacks on the victim's credibility. Counsel's

trial strategy included attacking the victim's veracity by impeaching her with a prior conviction,

challenging inconsistencies in her statements, and her use of illicit drugs. That trial strategy did

not include attacking the victim based on her mental health status. ECF No. 8-1 at 271-72.

      Additionally, the post-conviction court determined that Bellamy failed to demonstrate

prejudice arising from counsel's decision to not pursue D.C.'s mental health status. The post-

conviction court determined that Bellamy failed to "show that there was a reasonable possibility

of a different outcome in his case if trial counsel had retained an expert to examine this issue in

depth." ECF No. 8-1 at 272.

      Absent clear and convincing evidence to the contrary, a claim in which counsel's

decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d

117, 125 (4th Cir. 1989). Having examined the post-conviction court's ruling as well as having

independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Bellamy has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness.  28 U.S.C. §2254(d); *see Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing."). The post-conviction court's decision that trial counsel's approach to attacking D.C.'s credibility was a reasonable trial tactic and that Bellamy failed to show prejudice resulting from trial counsel's conduct is supported by the record and is a reasonable application of *Strickland*. The decision will not be disturbed.

### D.   Grounds Nine, Ten, Twelve and Thirteen

Bellamy next contends that the postconviction court erred in determining that trial counsel was not ineffective for failing to: (a) have the condom that was recovered by the police at the crime scene tested for DNA; (b) "develop and present a defense theory" regarding "exculpatory evidence found at [the] crime scene that would have exonerated him;" (c) investigate the chain of custody for the condom; and (d) "develop testimony" that the State recovered and then failed to test the condom.  ECF No. 1-1 at17-21.

The post-conviction court rejected each of these claims properly finding that in light of Bellamy's DNA being found in semen on D.C.'s thigh; D.C.'s physical description of her assailant that matched Bellamy; and D.C. having provided the license plate of the car in which she was raped that was traced to Bellamy; he had "little basis to contest the issue of identification; the primary issue was whether the sexual contact was consensual."  ECF No. 8-1 at 277.

18

Trial counsel testified at the post-conviction hearing that Bellamy had admitted to her that he had sex with D.C. but claimed it was consensual. Bellamy refutes this contention in his opposition response but did not challenge trial counsel's testimony during the post-conviction proceeding.

Nevertheless, the post-conviction court properly determined that even if the condom had been tested and contained another person's DNA, Bellamy's DNA was still found on the victim, and as such, different DNA found on the condom would do nothing to bolster Bellamy's defense. If the DNA had been tested and Bellamy's DNA was not found on the condom, it would not explain why his DNA was found on her thigh or dispute D.C.'s account that she was raped. Further, the court found that if the DNA had been tested and Bellamy's DNA found on the condom such a fact would have only served to enhance D.C.'s credibility and her version of the events. As such, pursuing this evidence was no benefit to Bellamy.

In short, if the condom were tested and Bellamy's DNA recovered, it would have bolstered the State's case against him. If the condom were tested and his DNA not recovered, it would do little to assist him since his DNA was found on D.C.'s leg. The post-conviction court properly noted that finding of Bellamy's semen on D.C.'s leg greatly diminished the possible usefulness of testing the condom on the issue of identification and as such trial counsel was not ineffective in failing to pursue this additional evidence.  ECF No. 8-1 at 276.

The post-conviction court's finding regarding the use of the DNA evidence and the testing of the condom withstands scrutiny.  It is supported by the evidence and not an unreasonable application of clearly established federal law. It will not be disturbed.

E.    **Ground Eleven**

Next, Bellamy claims that the post-conviction court erred when it did not conclude trial counsel was ineffective in "failing to object to hearsay statements made by the victim following the rape relating to the license plate information conveyed by the victim and her description of the attacker."  ECF No. 1-1 at 19.

In his petition before this Court, Bellamy does not explain what statement he is challenging. However, he raised a similar claim in his post-conviction proceeding as to the testimony of a police detective and police officer, who each testified about the victim's physical description of her assailant as well as the license plate of the car in which she was raped.  ECF No. 8-1 at 279-81.

Bellamy's claims regarding this testimony relate to identification of D.C.'s assailant, which in light of Bellamy's semen being found on D.C.'s leg, was not an issue.  The central question put to the jury was whether the encounter between Bellamy and D.C. was consensual.  D.C.'s ability to identify Bellamy and his license plate did not go to that issue and as such, Bellamy did not suffer any prejudice from his counsel's failure to object to this testimony.

In rejecting this claim the post-conviction court explained that the detective's testimony was not offered to prove the truth of the matter asserted but rather as evidence of why he had not pursued another man as a suspect in the case, *i.e.*, because the other suspect did not match D.C.'s description of her attacker and the license plate number provided by D.C. was traced back to Bellamy.  ECF No. 8-1 at 279-80.  As such, the post-conviction court found that trial counsel's failure to object to the testimony was not deficient because the testimony was in fact admissible and trial counsel had no obligation to raise meritless issues.  *Id*. at 281.

Additionally, the record demonstrates that D.C. was the State's first witness and was therefore available to be fully cross-examined on all of her statements. ECF No. 8-1 at 281; ECF No. 8-11 at 12-13 (Trial Transcript 09/26/2014).

The post-conviction court also determined that tracing the license plate to Bellamy was based on public records which were available to both the State and Bellamy. ECF No. 8-1 at 280-81.

Lastly, to the extent D.C.'s trial testimony and statements to police were inconsistent, the post-conviction court observed that defense counsel took advantage of those inconsistencies in order to attack her credibility. *Id*. at 282-83.

In all, the post-conviction court concluded Bellamy failed to demonstrate either that his trial counsel's performance was deficient or that any prejudice arose from the conduct of trial counsel regarding the allegedly hearsay statements inured to Bellamy. ECF No. 8-1 at 284.

Once again, the post-conviction court's findings are a reasonable interpretation of the facts established in the record and a reasonable application of *Strickland.* Having examined the post-conviction court's ruling as well as having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Bellamy has failed to demonstrate error on the part of his trial counsel or to demonstrate prejudice. In short, Bellamy has provided no basis for relief on this claim.

## F.      Ground Fourteen

Next, Bellamy asserts the post-conviction court erred in finding that trial counsel was not ineffective when she failed to ask for an in-camera review of the admissibility of the internal affairs files of Detective Connelly. ECF No. 1-1 at 21. Detective Connelly was initially the lead

21

detective on the case but was not called to testify at trial.  During pre-trial proceedings, the State notified the defense that Detective Connelly had undergone investigation by the internal affairs department.  When defense counsel sought to secure additional information regarding the investigation she was rebuffed because Connelly was not being called as a witness in the case. *See* ECF No. 8-12 at 143.

In considering this claim, the post-conviction court determined that seeking such a review was "a fruitless exercise" because the State did not call the detective to testify and under both the Maryland rules and past precedent, Bellamy was not "entitled to disclosure of any contents of the [internal affairs] file of Detective Connelly" since she was not a witness.  ECF No. 8-1 at 284-85. Additionally, the post-conviction court found that Bellamy failed to demonstrate that there was something in Detective Connelly's file that would have helped him in his trial. *Id*.  This Court agrees.

As Bellamy had no basis to seek the in-camera review and has failed to articulate how he was prejudiced by the failure to seek review, the post-conviction court's determination of this issue shall not be disturbed.

### G.    Ground Fifteen

Bellamy claims the post-conviction court erred in concluding that his appellate counsel was not ineffective when they failed to raise, on direct appeal, the claim that the trial court erred in refusing to give a "missing witness" instruction to the jury.  ECF No. 1-1 at 21-22.  In his petition in this Court, Bellamy does not explain who the missing witness was or why the instruction was necessary.  He did, however, raise a similar claim in his post-conviction proceedings.  There he argued that the instruction that should have been given was based on the State's decision not to call Detective Connelly as a witness at trial.  ECF No. 8-1 at 286.

In rejecting Bellamy's claim, the post-conviction court restated the Maryland pattern jury instruction on missing witnesses which provides:

> You have heard testimony about (name), who was not called as a witness in this case.  If a witness could have given important testimony on an issue in this case and if the witness was peculiarly within the power of the [state] [defendant] to produce, but was not called as witness by the [State][defendant] and the absence of that witness was not sufficiently accounted for or explained, then you may decide that the testimony of that witness would have been unfavorable to the [State][defendant].

ECF No. 8-1 at 286 (quoting MPJI-Cr 3:29).  The court explained what it means for a witness to be "peculiarly available" to a party: "that the witness is physically available only to the opponent or that the witness has the type of relationship with the opposing party that pragmatically renders his testimony unavailable to the opposing party."  *Bereano v. State Ethics Comm'n*, 403 Md. 716, 742 (2008); ECF No. 8-1 at 288.  The post-conviction court determined that appellate counsel made a strategic decision not to pursue this claim, in order to pursue five other claims for relief. ECF No. 8-1 at 288.  The court found counsel's decision reasonable given Bellamy's failure to demonstrate his entitlement to have the instruction given as he did not show that Detective Connelly was peculiarly available to the State. *Id.*

The post-conviction court's determination withstands scrutiny. "[U]pon proper request, a defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence."  *United States v. Hicks*, 748 F. 2d 854, 857 (4th Cir. 1984) (*citations omitted*).  However, the question on collateral attack is whether the missing or challenged instruction so infected the entire trial that the resulting conviction violated due process. *Smith v. Bordenkircher*, 718 F.2d 1273 (4th Cir. 1983), *cert. denied*, 466 U.S. 976 (1984); *see Gaskins v. McKellar*, 916 F.2d 941 (4th Cir. 1990), *cert. denied*, 500 U.S. 961 (1991); *United States v. Velazquez*, 847 F.2d 140 (4th Cir. 1988); *United States v. Love*, 767 F.2d

1052, 1060 (4th Cir. 1985), *cert*. *denied*, 474 U.S. 1081 (1986). Bellamy fails to make this showing.

Bellamy sought the missing witness instruction because Detective Connelly transported evidence from the SAFE exam at Mercy Hospital to the Baltimore City Police Department Evidence Collection Unit and did not testify at trial regarding that transfer of evidence.  Other witnesses testified as to the chain of custody and that the seals on the evidence collected were not disturbed. As to the calling of Detective Connelly to testify, the post-conviction court properly found that there was no evidence that Detective Connelly was peculiarly available to the State.

Moreover, appellate counsel need not pursue frivolous claims and may make reasonable determinations as to which claims are the best to pursue. The post-conviction court's findings will not be disturbed. Under *Strickland*, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The failure to make a frivolous motion or to make ethically improper arguments does not establish that there was an unprofessional error, nor is there even a remote possibility that the result of the trial would have been different had the issue been raised on appeal.  *See Horne v. Peyton*, 356 F.2d 631 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences). Bellamy has failed to make the requisite showing.

### H.    Ground Sixteen

Next, Bellamy claims the post-conviction court erred in its determination that trial counsel was not ineffective for failing to file a timely application for review of sentence by a three-judge panel.  ECF No. 1-1 at 22-23. The post-conviction court determined that "[i]n some circumstances, the decision not to file an application may be tactical because the three-judge

24

panel could increase the sentence." ECF No. 8-1 at 291. Trial counsel advised Bellamy, on the record, that she would file an application for a three-judge panel review only if he instructed her to do so. Bellamy did not make an explicit request. *Id.* At the time of sentencing, while Bellamy was sentenced to three life terms which clearly could not have been increased by the panel, he was also sentenced to a 20-year term of confinement on the kidnaping charge, an offense which as a common law offense under Maryland law has no statutory maximum. *Nicholas v. State*, 461 Md. 572, 579 n. 1. (2018). Thus, at the time of sentencing, counsel reasonably believed that Bellamy's sentence could be enhanced by the panel and specifically advised Bellamy that she would not file the motion without his explicit direction to do so. That Bellamy's kidnapping sentence was later merged to his other sentences does not change the analysis of the post-conviction court's determination that trial counsel did not err in failing to file the motion. ECF No. 8-1 at 292.

Bellamy provided no support for his position that trial counsel had a duty to consult with him beyond her advisement at sentencing. Counsel advised Bellamy of his right to file the motion for a three-judge panel review, and that she would only do so upon his explicit request. Bellamy took no further action and counsel was not ineffective for failing to pursue this avenue of relief. The post-conviction court's determination withstands scrutiny and will not be disturbed.

## I.      Ground Seventeen

Lastly, Bellamy claims that the cumulative errors of trial counsel entitles him to relief. Pursuant to the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990*); see also United States v.*

*Martinez*, 277 F.3d 517, 532 (4th Cir. 2002); *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009).

Generally, if a court "determine[s] ... that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." *United States v. Fields,* 483 F.3d 313, 362 (8th Cir. 2007).  To reverse for cumulative error, the errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *Basham*, 561 F.3d at 330 (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)). When "none of [the trial court's] individual rulings worked any cognizable harm [on the defendant],...[i]t necessarily follows that the cumulative error doctrine finds no foothold." *United States v. Sampson*, 486 F.3d 13, 51 (1st Cir. 2007).  In the Fourth Circuit, the cumulative error doctrine is not generally recognized because "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient."  *Fisher v. Angelone*, 163 F.3d 835, 852 n. 9 (4th Cir. 1998); *see also Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997); *Higgs v. United States*, 711 F. Supp. 2d 479, 552 (D. Md. 2010) (in the context of collateral review, review based on the cumulative effect of errors is available only where individual constitutional errors are found).

In declining Bellamy's cumulative error claim, the post-conviction court held:

Petitioner has failed to prove that trial counsel committed any errors beyond failing to file a motion for modification of sentence on his behalf.  Because Petitioner has only shown that trial counsel committed that one error, which was unrelated to the conduct of the trial, there can be no cumulative effect with other errors.

ECF No. 8-1 at 292.

The same analysis applies here. As Bellamy has failed to show any constitutional errors committed by trial or appellate counsel, his claim of cumulative error is unavailing.

## IV.    CONCLUSION

Having found that the Petition for Writ of Habeas Corpus does not present a claim upon which federal habeas relief may be awarded, this Court must consider whether a certificate of appealability should issue.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U.S.C. § 2253(c)(2).  Bellamy may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

By separate Order which follows, the Petition for Writ of Habeas Corpus shall be denied and dismissed and a certificate of appealability shall not issue.


___February 15, 2022___                          _____/s/_____
Date                                                          GEORGE J. HAZEL
                                                                United States District Judge